**Slip Op. 15-32**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

```
_____
FENGCHI IMP. & EXP. CO., LTD.   :
OF HAICHENG CITY, FENGCHI        :
REFRACTORIES CO. OF HAICHENG     :
CITY, and FEDMET RESOURCES       :
CORPORATION,                     :
                                 :
        Plaintiffs,              :   Before: Nicholas Tsoucalas,
                                 :           Senior Judge
     v.                          :
                                 :   Court No.: 13-00166
UNITED STATES,                   :
                                 :
        Defendant,               :
                                 :
        and                      :
                                 :
RESCO PRODUCTS, INC., and        :
ANH REFRACTORIES COMPANY,        :
                                 :
        Defendant-Intervenors.:
_____
```

### OPINION

[Plaintiffs' motion for judgment on the agency record is denied.]

Dated:April 13, 2015

Donald B. Cameron, Brady W. Mills, Julie C. Mendoza, Mary S. Hodgins, R. Will Planert, and Sarah S. Sprinkle, Morris Manning & Martin LLP, of Washington, DC, for plaintiffs.

Melissa M. Devine, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant. With her on the brief were Stuart F. Delery, Assistant Attorney General, Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director, and Loren M. Preheim Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC. Of counsel on the brief was Devin S. Sikes, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, DC.

Camelia C. Mazard, Robert R. Doyle, Jr., and Andre P. Barlow, Doyle Barlow & Mazard PLLC of Washington, DC, for defendant-intervenor Resco Products, Inc.

Joseph W. Dorn and Brian E. McGill, King & Spalding LLP, of Washington, DC, for defendant-intervenor ANH Refractories Company.

Tsoucalas, Senior Judge: Plaintiffs Fengchi Import and Export Co., Ltd. of Haicheng City, Fengchi Refractories Co. of Haicheng City, and Fedmet Resources Corporation (collectively "Plaintiffs"), move for judgment on the agency record contesting defendant United States Department of Commerce's ("Commerce") determination in Certain Magnesia Carbon Bricks From the People's Republic of China: Final Results and Final Partial Rescission of Countervailing Duty Administrative Review; 2010, 78 Fed. Reg. 22,235 (Apr. 15, 2013) ("Final Results"). Commerce and defendant-intervenors, Resco Products Inc. and ANH Refractories Company, oppose Plaintiffs' motion. For the following reasons, Plaintiffs' motion is denied.

## BACKGROUND

Magnesia carbon bricks ("MCBs") from the People's Republic of China ("PRC") are subject to a countervailing duty ("CVD") order. See Certain MCBs From the PRC: CVD Order, 75 Fed. Reg. 57,442 (Sept. 21, 2010) (the "Order"). On October 31, 2011, Commerce initiated an administrative review of the Order, covering sales of subject merchandise between August 2, 2010 and December 31, 2010 ("2010 Administrative Review"). See Initiation of

_Antidumping and CVD Administrative Reviews and Request for Revocation in Part_, 76 Fed. Reg. 67,133, 67,139-40 (Oct. 31, 2011). Commerce named Fengchi Import and Export Co., Ltd. of Haicheng City and Fengchi Refractories Co. of Haicheng City, as mandatory respondents.[1]  _Id._  Fedmet, a domestic importer of Fengchi's merchandise, joined the review as an interested party.  _See_ Letter to Commerce re: CVD Order on Certain MCBs from the PRC, Administrative Review (8/2/10-12/31/11): Entry of Appearance and APO Application (Oct. 31, 2012), Public Rec. 102 at 1.[2]

On November 22, 2011, Commerce released U.S. Customs and Border Patrol ("CPB") data, covering Fengchi's imports of MCBs from the PRC made during the period of review ("POR"), and invited Fengchi to comment on the data.  _See_ Certain MCBs from the PRC: Customs Data of U.S. Imports of Certain MCBs, (Nov. 22, 2011), PR 20 at 1.

On February 21, 2012, Commerce issued a questionnaire to the Government of China ("GOC"), with instructions to forward it to Fengchi.  Letter to GOC re: First Administrative Review of CVD

---

[1] Fengchi Import and Export Co., Ltd. of Haicheng City is a Chinese exporter of MCBs, and Fengchi Refractories Co. of Haicheng City is its affiliated producer.  _See_ _Final Results_, 78 Fed. Reg. at 22,235.  Throughout the opinion, the court will refer to them collectively as "Fengchi."

[2] Hereinafter, documents in the public record will be designated "PR" and documents in the confidential record designated "CR" without further specification except where relevant.

Order on Certain MCBs from the PRC, PR 65 at 1-2 (Feb. 21, 2012) ("Initial Questionnaire").   Commerce insisted that both the GOC and Fengchi respond.  Id.  Commerce requested that Fengchi report all domestic and foreign sales of both subject and non-subject merchandise, as well as total exports of subject and non-subject merchandise to the United States and other markets during the POR. See id. at section III.   Specifically, Commerce requested information on Fengchi's sales and exports of magnesia alumina carbon bricks ("MACBs") during the POR. See id.

On March 29, 2012, Fengchi informed Commerce that, because it had no entries, exports, or sales of subject merchandise to the United States during the POR, there was no basis to conduct a review of Fengchi and, thus, Commerce should rescind the administrative review of the company.  See Letter to Commerce re: CVD Order on Certain MCBs from the PRC; Administrative Review (8/2/10-12/31/10) (Mar. 29, 2012), PR 59 at 1-2.  Fengchi insisted that because it did not have entries or sales during the POR, its letter to Commerce should be considered a complete response.  Id. at 2.  Fengchi asserted that even though the entry data from the U.S. Customs and Border Patrol ("CBP") appears to show entries of subject merchandise by Fengchi, the company was not in a position to account for the entry data.  Id. at 3-4.

Concurrent with 2010 Administrative Review, Commerce conducted a scope inquiry to determine whether MACBs from the PRC

were subject to the Order.  See Certain MCBs from the PRC: Issues and Decision Memorandum for the Final Results of the 2010-2011 Administrative Review, (Apr. 9, 2013) PR 117 at 1-2 ("IDM").  On July 2, 2012, Commerce issued the final results of its scope inquiry, finding that MACBs were within the scope of the Order. See Certain MCBs from the PRC and Mexico: Final Scope Ruling — Fedmet Resources Corporation at 1-2, Case Nos. A-201-837, A-570-954 and C-570-955 (July 2, 2012) ("MACB Scope Ruling").

Prior to issuing the MACB Scope Ruling, Commerce placed the CBP information on the record regarding Fengchi's apparent entries during the POR and requested comments from Fengchi on the data.  Mem. re: MCBs from the PRC ( C-570-955): Requests for Entry Summaries from CBP, CR 14 at 1 (June 20, 2012).  Subsequently, on July 2, 2012, in its comments to Commerce's June 20, 2012 memorandum, Fengchi explained that its entries were incorrectly categorized as subject merchandise by CBP.  Letter to Commerce re: CVD Order on Certain MCBs from the PRC; Administrative Review (8/2/10-12/31/10), CR 15 at 1-6 (July 2, 2012).  Fengchi argued that the description of the merchandise in these documents supports its claim that the company did not have entries of subject merchandise during the POR.  Id.

On August 15, 2012, Commerce informed Fengchi that it should have responded to its Initial Questionnaire issued on February 21, 2012, because the CBP information had been placed on

the record and the MACB Scope Ruling had been issued, demonstrating that Fengchi had made subject entries during the POR.  Letter to GOC re: First Administrative Review of CVD Order on Certain MCBs from the PRC: Deficiency Letter Regarding Inadequate Questionnaire Response, CR 17 at 1-3 (Aug. 15, 2012).  Additionally, Commerce requested that Fengchi submit information with regards to its sales of MACBs during the POR.  Id. at 2.

On August 16, 2012, Fengchi submitted a letter to Commerce objecting to its request, arguing that: (1) Fengchi correctly reported that it had no entries of MCBs at the time Commerce issued the questionnaire; (2) Commerce's request contradicts the time limits provided in 19 C.F.R. § 351.225(l)(4), because the request came a month after the final scope determination and 289 days after the initiation of this review; and (3) the request was unfair and burdensome. PR 72 at 1-12. Fengchi also filed for an extension of ninety days to respond to the questionnaire. PR 73 at 1-5.

In response to Fengchi requesting an extension of time to respond to Commerce's initial questionnaire, Commerce extended the deadline for filing a responses to the Initial Questionnaire for both Fengchi and the GOC until October 1, 2012. See Letter to Fengchi re: First Administrative Review of the CVD Order on Certain MCBs from the PRC: Fengchi's Extension Request, PR 78 at 1 (Aug. 28, 2012).  Subsequently on August 29, 2012, Fengchi informed

Commerce that it would not respond to its Initial Questionnaire arguing that Commerce's request was contrary to the express terms of 19 C.F.R. § 351.225(l)(4) and that Commerce's untimely request to report such sales was unreasonably burdensome and prejudicial. See Letter to Fengchi re: CVD Order on Certain MCBs from the PRC; Administrative Review, PR 81 at 2-3 (Aug. 29, 2012).

On September 11, 2012, Commerce granted Fengchi a final opportunity to respond its questionnaire by October 1, 2012, and once again Fengchi declined to comply. See Letter to Fengchi re: First CVD Administrative Review of Certain MCBs from the PRC, PR 86 at 1-3 (September 11, 2012); see also Letter to Commerce re: CVD Order on Certain MCBs from the PRC; CVD Administrative Review (8/02/10-12/31/10), PR 95 at 1-2 (Oct. 1, 2012).

Commerce issued the preliminary results of the 2010 Administrative Review in October 2012. See Certain MCBs From the PRC: 2010 CVD Administrative Review, 77 Fed. Reg. 61,397 (Oct. 9, 2012) ("Preliminary Results"). See also Decision Memorandum for Preliminary Results of CVD Administrative Review: Certain MCBs from the PRC, PR 98 (Oct. 1, 2012) ("PRM"). Commerce determined that Fengchi's refusal to provide information on its MACBs sales constituted a failure to cooperate with the review to the best of its ability and applied total adverse facts available ("AFA").

PRM at 6-9.   Commerce assigned a 262.80% dumping margin to
Fengchi's sales.   PRM at 8.

Commerce issued the Final Results in April 2013,
upholding the Preliminary Results in their entirety.   Final
Results, 78 Fed. Reg. at 22,236.

### JURISDICTION and STANDARD OF REVIEW

The Court has jurisdiction pursuant to 28 U.S.C. §
1581(c) (2012) and section 516A(a)(2)(B)(i) of the Tariff Act of
1930,[3] as amended, 19 U.S.C. § 1516a(a)(2)(B)(i) (2012).   The court
will uphold Commerce's final determination in a countervailing
duty administrative review unless it is "unsupported by
substantial evidence on the record, or otherwise not in accordance
with law."   19 U.S.C. § 1516a(b)(1)(B)(i).   Substantial evidence
"means such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion."   Universal Camera Corp. v. NLRB,
340 U.S. 474, 477 (1951).

Additionally, when reviewing an agency's interpretation
of its regulations, the court must give substantial deference to
the agency's interpretation, Michaels Stores, Inc. v. United
States, 766 F.3d 1388, 1391 (Fed. Cir. 2014) (citing Torrington
Co. v. United States, 156 F.3d 1361, 1363-64 (Fed. Cir. 1998)),

---

[3] Further citations to the Tariff Act of 1930 are to the relevant
portions of Title 19 of the U.S. Code, 2012 edition, and all
applicable amendments thereto.

according it "'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512, (1994) (citations omitted); accord Viraj Group v. United States, 476 F.3d 1349, 1355 (Fed. Cir. 2007). In this context, "[d]eference to an agency's interpretation of its own regulations is broader than deference to the agency's construction of a statute, because in the latter case the agency is addressing Congress's intentions, while in the former it is addressing its own." Viraj, 476 F.3d at 1355 (quoting Gose v. U.S. Postal Serv., 451 F.3d 831, 837 (Fed. Cir. 2006).

## DISCUSSION

Fengchi contests the following aspects of the Final Results: Commerce's request for sales information on MACBs; Commerce's application of AFA; Commerce's selection of 262.80% as the AFA rate. See Pls.' Br. Supp. Mot. J. Agency R. at 7–23 ("Pls.' Br.").

As an initial matter, the Court of Appeals for the Federal Circuit ("CAFC") issued an opinion overturning the MACB Scope Ruling on June 20, 2014, after the completion of briefing in this case. See Fedmet Res. Corp. v. United States, 755 F.3d 912, 914 (Fed. Cir. 2014). Plaintiffs argues in their brief that a reversal of the MACB Scope Ruling will resolve the issues in this case because "there would be no lawful basis for Commerce to impose countervailing duties on [MACBs] under the [Order], and thus, no

lawful basis for Commerce to have directed Fengchi to answer the CVD questionnaire in the administrative review with respect to [MACBs]." Pl.'s Br. 7–8. The court must reject this argument. The Fedmet litigation concerned the MACB Scope Ruling. This case concerns Commerce's ability to request information on products subject to a scope ruling during an administrative review and its imposition of adverse facts available after Fengchi declined to comply with that request. Thus, the CAFC's decision in Fedmet does not resolve the legal issues raised in the instant case.

## I. Commerce's Request for Information on Fengchi's MACB Sales

The first issue before the court is whether Commerce properly requested that Fengchi provide information on its sales of MACBs during the review. As noted above, Fengchi declined to provide such information on the theory that Commerce's request violated 19 C.F.R. § 351.225(l)(4). As a result of Fengchi's refusal to provide information, Commerce imposed AFA based on Fengchi's refusal to provide the information. Plaintiffs claim that Commerce's request was inconsistent with 19 C.F.R. § 351.225(l)(4) because Commerce issued the scope ruling on MACBs 245 days after the initiation of the review. Pls.' Br. at 9. Alternatively, Plaintiffs claim that even if Commerce's interpretation of the regulation was proper, it was nevertheless impractical for Commerce to request that information so late in the review. Id. at 15–17.

### A. Commerce's interpretation of 19 C.F.R. § 351.225(l)(4) was reasonable.

Under 19 C.F.R § 351.225(l)(4), where Commerce issues a scope ruling that a product is within the scope of an order within ninety days of the initiation of an administrative review of that same order, Commerce, "where practicable, will include sales of that product for purposes of the review and will seek information regarding such sales." 19 C.F.R § 351.225(l)(4). However, where Commerce issues the scope ruling more than ninety days after the initiation of the administrative review, Commerce "may consider sales of the product for purposes of the review on the basis of non-adverse facts available." <u>Id.</u> "However, notwithstanding the pendency of a scope inquiry, if [Commerce] considers it appropriate, [Commerce] may request information concerning the product that is the subject of the scope inquiry for purposes of a review . . . ." <u>Id.</u>

Here, Commerce issued the scope ruling on MACBs 245 days after initiating the administrative review at issue. <u>See</u> <u>PRM</u> at 6. As noted above, Commerce requested information on Fengchi's MACB sales shortly after issuing the scope ruling, <u>see</u> CR 17 at 2, but Fengchi declined to provide the information, insisting that Commerce's request was improper. <u>See</u> PR 81 at 2. Commerce insisted that its request was consistent with section 351.225(l)(4) because the regulation does not prohibit Commerce

from soliciting information on products that are subject to a scope ruling issued over ninety days after the review begins.  See IDM at 11-12.  Rather, according to Commerce, the regulation permits Commerce to decline to collect information in such situations and instead consider sales of the product on the basis of non-adverse facts available.  Id.

    Plaintiffs insist that Commerce's reading of section 351.225(l)(4) is unreasonable.  Instead, Plaintiffs suggest that the regulation creates a "bright-line rule": if the scope ruling is issued within ninety days of the initiation of the administrative review, then Commerce will request information on the product subject to that scope ruling if practicable, but if the scope ruling is issued more than ninety days after the initiation of the review, then Commerce may not request information on the product and may only consider sales of the product based on non-adverse facts available.  See Pls.' Br. at 9-12.  According to Plaintiffs, Commerce's interpretation renders the ninety-day time limit, and therefore much of the regulation itself, "mere surplusage."  Id. at 13.  Moreover, Plaintiffs insist that Commerce indicated that their reading of the regulation was proper during promulgation of the regulation and, in fact, acted in a manner consistent with this interpretation in a prior administrative review.  Id. at 11-15.

The court must reject Plaintiffs' interpretation because it alters the plain meaning of the regulation. According to Plaintiffs, where Commerce issues a scope ruling more than ninety days after the initiation of an administrative review, Commerce may consider sales of the product for purposes of the review, "but only on the basis of non-adverse facts available." Id. at 8-9 (emphasis added). This "bright-line rule" reads the word "only" into the second sentence of the regulation. However, section 351.225(l)(4) provides that in such situations, Commerce "may consider sales of the product for purposes of the review on the basis of non-adverse facts available." 19 C.F.R. § 351.225(l)(4) (emphasis added). The language of the regulation is permissive and simply does not proscribe Commerce's power to request information in the manner Plaintiffs suggest.

Furthermore, Plaintiffs reliance on the regulatory history of section 351.225(l)(4) is misplaced. According to Plaintiffs, Commerce adopted their interpretation of section 351.225(l)(4) at the preliminary rule making stage. Pls.' Br. at 11-13. In particular, Plaintiffs rely on Commerce's comment that, when a final scope ruling is issued more than ninety days after initiation of a review, it is "not practicable" to collect sales information and therefore Commerce "will rely on non-adverse facts available." Id. at 11 (citing Antidumping Duties; CVD: Proposed Rules, 61 Fed. Reg. 7308, 7322 (Feb. 27, 1996)). However, Commerce

clearly departed from this interpretation by the final rule making stage.  Commerce stated that section 351.225(l)(4) "provides, among other things, that if [Commerce] determines after [ninety] days of the initiation of a review that a product is included within the scope of an order or suspended investigation, [Commerce] may decline to seek sales information concerning the product for purposes of the review." Antidumping Duties; CVD: Final Rule, 62 Fed. Reg. 27,296, 27,330 (May 19, 1997) ("Preamble").  Thus, at the final rulemaking stage, Commerce did not limit itself to reliance on non-adverse facts available, but instead provided itself with flexibility to determine whether to collect information.  See id.

Plaintiffs also rely on two separate statements by Commerce at the final rule making stage to support its interpretation.  First, Plaintiffs note that Commerce rejected a request to extend the ninety-day period when it extends the deadline for the preliminary results of a review, indicating that Commerce did not intend to collect information where the scope ruling is issued after the ninety-day period.  See Pls.' Br. at 11–12.  Plaintiffs misinterpret Commerce's decision; Commerce rejected the request because it generally makes the decision to extend a deadline for the preliminary results of a review right before that deadline expires and well after the ninety-day period ends.  Preamble, 62 Fed. Reg. at 27,330.  Second, Plaintiffs note

that Commerce rejected a suggestion that it collect information for a subsequent review when the scope ruling is issued after the ninety-day period. See Pls.' Br. at 12. This decision also does not support Plaintiffs' argument; Commerce rejected the suggestion because it was unwilling to collect information for a future review. Preamble, 62 Fed. Reg. at 27,330.

Ultimately, Commerce's interpretation of section 351.225(l)(4) was consistent with the plain language of the regulation. Section 351.225(l)(4) does not proscribe Commerce's power to collect information on a respondent's sales of a product subject to a scope ruling issued over ninety-days after the initiation of the review, so long as it is practicable to do so. 19 C.F.R. § 351.225. It does, however, permit Commerce to decline to collect such information and instead rely on non-adverse facts available. Id. Contrary to Plaintiffs' argument, Commerce's interpretation does not render any language in the regulation meaningless: if the scope ruling is issued within ninety-days of the initiation of the review, Commerce, where practicable, will collect information on the product subject to that scope ruling; if the scope ruling is issued more than ninety-days after the initiation of the review, Commerce may collect information on the product, if practicable, but may decline to consider the respondent's information and rely instead on non-adverse facts available. See id. As discussed above, this interpretation is

consistent with Commerce's discussion of section 351.225(l)(4) when promulgating the final rule. See Preamble, 62 Fed. Reg. at 27,330. Because Commerce's interpretation of the regulation was not plainly erroneous or inconsistent with the regulation, the court defers to Commerce's reading of 19 C.F.R § 351.225(l)(4). See Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512, (1994) (citations omitted); accord Viraj Group v. United States, 476 F.3d 1349, 1355 (Fed. Cir. 2007).

**B.  Commerce reasonably determined that it was practicable to request MACBs sales information.**

Having determined that Commerce's interpretation of section 351.225(l)(4) was reasonable, the court now considers whether it was practicable for Commerce to request information on Fengchi's MACBs sales. Plaintiffs insist that there was not sufficient time remaining in the review for Commerce to consider Fengchi's sales of MACBs. Pls.' Br. at 15–17.

The court must reject Plaintiffs' assertion because it was practicable for Commerce to request information on Fengchi's MACB sales in this proceeding. Here, Commerce sent Fengchi the Initial Questionnaire on February 21, 2012, PR 65 at 1–2, well before the October 1, 2012 deadline for its preliminary determination. PRM at 3. Commerce repeatedly offered to extend the deadline for Fengchi to provide the requested information. See, e.g., CR 17 at 1, PR 71 at 1. As discussed above, Commerce

also offered Fengchi one final opportunity to comply on September 11, 2012, but once again, Fengchi declined to provide its MACB sales information. See PR 86 at 1-3.

Accordingly, because it was practicable to consider Fengchi's MACBs sales at the time of the MACB Scope Ruling, Commerce reasonably requested that data during the review.[4] See 19 C.F.R. § 351.225(l)(4).

## II. Commerce's Application of Adverse Facts Available

The next issue is whether Commerce properly relied on AFA when determining Fengchi's dumping margin. As noted above, Commerce found that AFA was appropriate because Fengchi refused to provide information on its MACB sales.

Commerce may apply AFA where "an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information." 19 U.S.C. § 1677e(b). "Compliance with the 'best of its ability' standard is determined by assessing whether the respondent has put forth its maximum effort to provide Commerce with full and complete answers" to a request for information. Nippon Steel Corp. v. United States, 337 F.3d 1373, 1382 (Fed. Cir. 2003).

---

[4] Commerce also argues that it had the authority to request MACB sales information at "any time during the proceeding" pursuant to 19 C.F.R § 351.301(c)(2) (2012). Because Commerce properly requested MACB sales information under 19 C.F.R § 351.225(l)(4), the court declines to consider this alternative justification.

Although it concedes that it did not provide information on its MACB sales, Plaintiffs argue that Commerce erroneously applied AFA because the request itself was improper. See Pls.' Br. at 17-21. As noted above, Plaintiffs insist that Commerce's request for Fengchi's MACB sales information violated 19 C.F.R. § 351.225(l)(4). Plaintiffs conclude that Commerce could not impose AFA based on Fengchi's failure to comply with an inappropriate request for information. See Pls.' Br. at 19. Plaintiffs rely on Laclede Steel Co. v. United States, 18 CIT 965 (1994), where the Court overturned Commerce's decision to impose AFA because Commerce's request for information was improper. See Pls.' Br. at 18-19 (citing Laclede Steel, 18 CIT at 973).

Plaintiffs' argument is unconvincing. As this court has already determined, Commerce's request for Fengchi's MACB sales information was proper. Accordingly, Plaintiffs' reliance on Laclede Steel is misplaced. Ultimately, Fengchi's refusal to provide information on its MACB sales demonstrated a failure to comply with Commerce's request for information, and Commerce reasonably applied AFA. See 19 U.S.C. § 1677e(b); Nippon Steel, 337 F.3d at 1382.

### III. The Adverse Facts Available Rate

Having determined that Commerce properly relied on AFA to determine Fengchi's dumping margin, the court now considers whether Commerce properly selected 262.80% as the AFA rate.

When selecting a total AFA rate, Commerce typically cannot calculate a rate for an uncooperative respondent because the information required for such a calculation has not been provided. As a substitute, Commerce relies on various "secondary" sources of information (the petition, the final determination from the investigation, prior administrative reviews, or any other information placed on the record), 19 U.S.C. § 1677e(b), (c), in order to select a proxy that is "a reasonably accurate estimate of the respondent's actual rate, albeit with some built-in increase intended as a deterrent to non-compliance." F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d 1027, 1032 (Fed. Cir. 2000)("De Cecco"). When selecting an appropriate total AFA proxy, "Commerce must balance the statutory objectives of finding an accurate dumping margin and inducing compliance." Timken Co. v. United States, 354 F.3d 1334, 1345 (Fed. Cir. 2004). The proxy's purpose "is to provide respondents with an incentive to cooperate, not to impose punitive, aberrational, or uncorroborated margins." De Cecco, 216 F.3d at 1032. "Commerce must select secondary information that has some grounding in commercial reality." Gallant Ocean (Thailand) Co. v. United States, 602 F.3d 1319, 1324 (Fed. Cir. 2010). Although a higher AFA rate creates a stronger incentive to cooperate, "Commerce may not select unreasonably high rates having no relationship to the

respondent's actual dumping margin." Id. at 1323 (citing De Cecco, 216 F.3d at 1032).

The requirements articulated by the CAFC are an extension of the statute's corroboration requirement. See De Cecco, 216 F.3d at 1032. Under 19 U.S.C. § 1677e(c), when Commerce relies on secondary information, it "shall, to the extent practicable, corroborate that information from independent sources that are reasonably at [its] disposal." 19 U.S.C. § 1677e(c). To corroborate secondary information, Commerce must find that it has "probative value." See KYD, Inc. v. United States, 607 F.3d 760, 765 (Fed. Cir. 2010). Secondary information has "probative value" if it is "reliable" and "relevant" to the respondent. Mittal Steel Galati S.A. v. United States, 31 CIT 730, 734, 491 F. Supp. 2d 1273, 1278 (2007); see KYD, 607 F.3d at 765-67.

In the CVD context, Commerce follows a hierarchy when selecting a proxy subsidy rate for an uncooperative respondent because "unlike other types of information, such as publicly available data on the national inflation rate of a given country or national average interest rates, there typically are no independent sources for data on company-specific benefits resulting from countervailable subsidy programs." Certain Kitchen Appliance Shelving and Racks From the People's Republic of China: Final Results of the CVD Administrative Review, 77 Fed. Reg. 21,744 (April 11, 2012) and accompanying Issues and Decision Memorandum

for the Final Results of the CVD Administrative Review of Certain
Kitchen Appliance Shelving and Racks from the People's Republic of
China at 4 (Apr. 4, 2012).  To select an AFA subsidy rate, Commerce
first attempts to apply the highest, above *de minimis* subsidy rate
calculated for the identical program from any segment of the
proceeding.  See PRM at 8.  Absent a calculated above *de
minimis* subsidy rate from an identical program, the Department
then seeks a subsidy rate calculated for a similar
program.  Id.  Absent such a rate, the Commerce then resorts to
the third step in its hierarchy, an above *de minimis* calculated
subsidy rate for any program from any CVD proceeding involving the
country in which the subject merchandise is produced, so long as
the producer of the subject merchandise or the industry to which
it belongs could have used the program for which the rates were
calculated.  Id.

        In this case, Commerce assigned Fengchi a rate of 262.80%
which reflected the sum of rates assigned for 22 programs that
Commerce found countervailable in the investigation.  See Final
Results to CVD Administrative Review of Certain MCBs from the PRC:
Application of AFA for Non-Cooperative Companies, PR 118 at 2, 7
(Apr. 9, 2013); IDM at 18.  Since both Fengchi and the PRC failed
to respond to Commerce's questionnaire, Commerce made the adverse
inference that Fengchi had facilities and/or cross-owned
affiliates that received subsidies under all of the sub-national

programs which Commerce determined countervailable in the investigation. Id. at 2. The rates for these programs ranged 0.51% to 25%, covering direct tax, other income tax, indirect tax, loan, export restraints, less than adequate remuneration, and grant programs. See id. at 7. For half of these programs, Commerce applied a rate based upon partial AFA, 21.24%, which it had calculated for a mandatory respondent in the original investigation. IDM at 19; PR 118 at 4-5. Commerce reasoned that the rates for these programs "were calculated in recent CVD final investigations or final results of review for fully cooperating respondents" and that, consequently, the rates "reflect the actual subsidy practices of PRC's national, provincial, and local governments." IDM at 18. Commerce also found the rates appropriate because they were "based upon information about the same or similar programs for periods close in time to the POR in the instant case." Id. Finally, Commerce determined that nothing on the record called into question the reliability of these calculated rates. Id.

Plaintiffs argue that the 262.80% rate applied to Fengchi "is unreasonable, overly punitive, and not reflective of Fengchi's commercial reality," because it "is more than 10 times higher than the only actual subsidy rate calculated for a cooperating respondent in the proceeding." Pl. Br. at 22. Plaintiffs also contend that Commerce's use of the 21.24% rate in

its calculation was unreasonable because it was "derived from partial AFA and thus was not calculated entirely based on actual data." Id. at 23.

On the issue of corroboration, the court finds that Commerce corroborated Fengchi's AFA rate to the extent practicable under 19 U.S.C. § 1677e(c). Both Fengchi and the GOC refused to provide any information during the administrative review regarding their use of countervailable subsidies, thus Commerce's ability to corroborate its secondary information was limited by Fengchi's lack of cooperation. The rates Commerce used to corroborate Fengchi's AFA rate were reliable because they were calculated in recent CVD final investigations or final results of review. PRM at 6. Furthermore, the rates were relevant because they were based upon information about the same or similar programs. Id. With regard to the programs for which there was no program-type match, Commerce selected the highest calculated subsidy rate for any PRC program from which the non-cooperative companies could receive a benefit to use as AFA. Id. These rates were calculated for periods close in time to the POR in the instant case. Id. Additionally, Commerce observed that it assigned a total AFA rate to Fengchi that is comparable to the AFA rate assigned to a mandatory respondent in the investigation that ceased to cooperate and withheld information. Id.

The court is not persuaded by Plaintiffs' argument that Commerce chose a rate that was unreasonable, overly punitive, and not reflective of Fengchi's commercial reality.  Nor is the court convinced that Commerce unreasonably relied on the 21.24% rate based upon partial AFA.  Due to Fengchi's lack of cooperation during the review, there is no company specific data on the record regarding Fengchi's participation in countervailable programs. Because there were no other independent sources of data on company-specific benefits, Commerce was limited in its ability to corroborate the information used to calculate the AFA rate.  Thus, Plaintiffs' arguments do not undermine the reasonableness of Commerce's corroboration given the limited information available to Commerce.  See Essar Steel, Ltd. v. United States, 753 F.3d 1368, 1374 (Fed. Cir. 2014).

Ultimately, section 1677e(c) requires that Commerce "shall, to the extent practicable, corroborate that information from independent sources that are reasonably at their disposal." 19 U.S.C. § 1677e(c).  As discussed above, both Fengchi and the GOC failed to cooperate with Commerce and provide company-specific information regarding countervailable benefits Fengchi received during the POR.  Since there were no other independent sources of data on company-specific benefits, Commerce was limited in its ability to corroborate the information used to calculate the AFA rate.  Accordingly, in light of the failure of Fengchi to cooperate

and the reasonably accurate nature of the secondary information that Commerce used under § 1677e(b), Commerce satisfied the requirement of corroborating the 262.80% AFA rate "to the extent practicable." Id.

### IV. Conclusion

For the foregoing reasons, the Final Results were supported by substantial evidence and otherwise in accordance with law. Plaintiffs' motion for judgment on the agency record is denied. Judgment will be entered accordingly.


                                        /s/ Nicholas Tsoucalas
                                        **Nicholas Tsoucalas**
                                        **Senior Judge**

**Dated:** April 13, 2015
        **New York, New York**